UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------x
STEPHEN CARRIER, :
an individual, : CASE NO.: 18-cv-1935
  :
  :
      Plaintiff, :
  : Judge:
vs. :
  :
  : Magistrate:
  :
ESSENCE FESTIVALS PRODUCTIONS :
LLC :
  :
      Defendant. :
------------------------------------------------------x

# COMPLAINT

BIZER & DEREUS, LLC
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Jennifer M. Coco (LA #34492)
jcoco@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1

Plaintiff, STEPHEN CARRIER, by and through his undersigned counsel, hereby files this Complaint and sues ESSENCE FESTIVALS PRODUCTIONS LLC (hereinafter "DEFENDANT") for declaratory and injunctive relief, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and alleges:

## JURISDICTION AND PARTIES

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12181 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

3. Plaintiff, STEPHEN CARRIER, (hereinafter referred to as "MR. CARRIER"), is a resident of Jefferson Parish, Louisiana.

4. MR. CARRIER is a qualified individual with a disability under the ADA. MR. CARRIER is a T-10 paraplegic.

5. Due to his disability, MR. CARRIER is substantially impaired in several major life activities and uses a wheelchair to ambulate. Specifically, MR. CARRIER is unable to walk, stand, or use his legs without assistance.

6. Upon information and belief, ESSENCE FESTIVALS PRODUCTIONS LLC is a limited liability company organized in the state of Louisiana and doing business in Orleans Parish.

7. Upon information and belief, ESSENCE FESTIVALS PRODUCTIONS LLC is the entity that organizes, hosts, and operates the three-day Essence Festival at the Mercedes-Benz Superdome, 1500 Sugar Bowl Drive, New Orleans, Louisiana, 70112, via a lease or

other operating agreement with the venue.

8. Upon information and belief, ESSENCE FESTIVALS PRODUCTIONS LLC meets the definition of a public accommodation, as a private entity that leases or otherwise operates a place of public accommodation, the Mercedes-Benz Superdome (a stadium), for its Essence Festival event. *See* 28 C.F.R. § 36.104 (*defining* "public accommodation" and "place of public accommodation").

9. Defendant is obligated to comply with the ADA.

10. All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Jefferson Parish, Louisiana.

## FACTUAL STATEMENT

11. MR. CARRIER realleges and reavers Paragraphs 1-10 as if they were expressly restated herein.

12. MR. CARRIER desired to attend the 2017 "Essence Festival" (hereinafter "Essence Festival" or "event"), an annual three-day event consisting of live music, entertainment, and cultural and educational presentations and seminars. The event is annually organized and hosted by the DEFENDANT in New Orleans, Louisiana, every summer.

13. Specifically, MR. CARRIER desired to attend Essence Festival on Sunday, July 2, 2017 to see the performance of Chance the Rapper.

14. On information and belief, DEFENDANT exclusively contracts with Ticketmaster, a third-party ticket vendor, for ticket sales to its event. When one visits DEFENDANT's event website searching for ticket sales, the DEFENDANT's website links directly to the website of its third-party ticket vendor, Ticketmaster.

15. On information and belief, DEFENDANT initially sells three-day passes for attendance

at the entirety of Essence Festival and only begins selling single-day tickets (the type MR. CARRIER wished to purchase) in the weeks leading up to the event.

16. MR. CARRIER visited the website of Ticketmaster, the DEFENDANT's third-party ticket vendor, in the weeks leading up to the event, to purchase two single-day tickets. Specifically, MR. CARRIER wished to purchase one ticket for an accessible seat for himself, and a companion ticket for his girlfriend.

17. MR. CARRIER was unable to purchase a ticket for an ADA accessible seat online via Ticketmaster's website. Specifically, when MR. CARRIER followed the website's prompts for purchasing ADA accessible seating, the website brought MR. CARRIER to an online form to "request accessible seating tickets." Ticketmaster does not permit the immediate online sale of ADA-accessible seats, but rather requires individuals, like MR. CARRIER, seeking accessible seating to fill out a form requesting such seats, for later consideration and eventual purchase via e-mail and/or telephone. On information and belief, such follow-up occurs during the set hours of the day that Ticketmaster's customer service representatives are at work.

18. A non-disabled individual wishing to purchase tickets to the DEFENDANT's event can readily purchase tickets online on Ticketmaster's website, without having to complete a form nor without additional emails and/or telephone calls with Ticketmaster's agents, and can do so at any hour of the day at their availability.

19. Because Ticketmaster, as DEFENDANT's third-party ticket vendor, would not permit MR. CARRIER to purchase tickets online, that same day MR. CARRIER had to place a phone call to Ticketmaster's general sales number in an attempt to purchase tickets. MR.

CARRIER was placed on hold for over ten minutes before hanging up and giving up on his attempt to purchase tickets to DEFENDANT's event.

20. Several days later, MR. CARRIER placed a second call to Ticketmaster's general sales number, hoping to purchase tickets, and was able to purchase a ticket for an ADA accessible seat and a companion ticket over the phone with a sales agent.

21. MR. CARRIER attended the DEFENDANT's event on the evening of July 2. MR. CARRIER enjoyed the performance of Chance the Rapper and the other musical acts that night.

## COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

22. MR. CARRIER realleges and reavers Paragraphs 1 - 21 as if they were expressly restated herein.

23. Upon information and belief, the DEFENDANT organizes, hosts, and operates the three-day Essence Festival at the Mercedes-Benz Superdome, 1500 Sugar Bowl Drive, New Orleans, Louisiana, 70112, via a lease or other operating agreement with the venue.

24. Upon information and belief, the DEFENDANT meets the definition of a public accommodation, as a private entity that leases or otherwise operates a place of public accommodation, the Mercedes-Benz Superdome (a stadium), for its Essence Festival event. *See* 28 C.F.R. § 36.104 (*defining* "public accommodation" and "place of public accommodation").

25. The U.S. Supreme Court has ruled that "the phrase 'public accommodation' … 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety

of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-677 (2001) (internal citations omitted).

26. Within ADA jurisprudence, there is a "general principle that, under the statute, a place of public accommodation may be 'operated' by entities who do not own the facility and use it for a limited time period only." *Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861, 874 (9th Cir. 2004) (internal citations omitted).

27. Since 2011, ADA regulations have been in place to govern the DEFENDANT's ticket sales procedures for individuals with disabilities. Pursuant to regulation, DEFENDANT as "a public accommodation that sells tickets for a single event or series of events" is required to "modify its policies, practices, or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating –

    o During the same hours; …
    o Through the same methods of distribution; [and]
    o In the same types and numbers of ticketing sales outlets, including … third-party ticketing services, as other patrons…"

    28 C.F.R. §§ 36.302(f)(1)(ii)(A), (C), (D).

28. The ADA prohibits discrimination by public accommodations, including the DEFENDANT, stating that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who … leases …or operates a place of public accommodation." 42 U.S.C. § 12182(a) ("General rule").

29. The ADA further mandates that "An … entity shall not, … ***through contractual or other arrangements***, utilize … methods of administration … that have the effect of

discriminating on the basis of disability." 42 U.S.C. § 12182(b)(1)(D)(i) (emphasis added). This regulation "make[s] clear that private entities otherwise covered by Title III may not avoid their obligations through contract." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 873 (9th Cir. 2004).

30. Relevant legislative history states a clear intent that these contractual prohibitions exist "to prohibit a public accommodation from doing indirectly through a contractual relationship, what it may not do directly. [A] covered entity may not use a contractual provision to reduce any of its obligations under this Act." H.R. Rep. No. 101-485(II), at 101, 104 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 384, 387.

31. The DEFENDANT contracts with a third-party ticket vendor, Ticketmaster, to sell tickets to its event on the vendor's website. On information and belief, Ticketmaster is the exclusive vendor for ticket sales to DEFENDANT's event.

32. Ticketmaster, DEFENDANT's third-party ticket vendor, operates its online ticket sales such that individuals without disabilities can immediately purchase tickets online, but MR. CARRIER, an individual with a disability, cannot readily purchase a ticket for an accessible seat online and instead is required to complete a form to request a ticket, to be sold to him at a later date, and/or to purchase a ticket over the phone or by other means.

33. Online ticket sales to DEFENDANT's 2018 Essence Festival, at present active on Ticketmaster's website, currently direct patrons seeking to purchase an accessible seat to a form to "request accessible seating tickets," which upon information and belief, is a substantially similar form to what MR. CARRIER encountered when attempting to purchase accessible seating online to DEFENDANT's 2017 Essence Festival.

34. DEFENDANT, by and through Ticketmaster, discriminated against MR. CARRIER by failing to ensure that MR. CARRIER had an equal opportunity to purchase tickets for accessible seating during the same hours and through the same methods of distribution as non-disabled individuals.

35. MR. CARRIER was deterred from purchasing tickets to DEFENDANT's event due to the methods of administration maintained by Ticketmaster, the DEFENDANT's third-party ticket vendor.

36. MR. CARRIER ultimately obtained a ticket for accessible seating, but only via the telephone and after several attempts to purchase tickets over the phone.

37. The United States Department of Justice ("U.S. DOJ") issued Technical Assistance materials interpreting the Title III ticket sales regulations at 28 C.F.R. § 36.302 upon their promulgation in 2011. The Technical Assistance materials explain that the impetus for these regulations was a long history of unequal ticket sales procedures, in the exact manner of ticket sales currently maintained by the DEFENDANT, by and through its contracted third party ticket vendor.  To wit,

> Over the past 20 years, some public and private venues, ticket sellers, and distributors have not provided the same opportunity to purchase tickets for wheelchair-accessible seats and non-accessible seats. The general public has been able to directly and immediately purchase tickets for non-accessible seats, whether through a venue's Internet site or its box office, or through a third-party Internet based vendor. However, these direct purchase options have simply been unavailable to many individuals with disabilities because transactions frequently could not be completed. ***Instead the purchaser was directed to send an e-mail or to call a separate telephone number to request tickets and wait for a response.***[1]

---

[1] US Dept. of Justice, Civil Rights Division, Disability Rights Section, "Ticket Sales," ADA 2010 Revised Requirements, pp 1-2 (available at https://www.ada.gov/ticketing_2010.htm) (emphasis added).

38. In December 2005, prior to the promulgation of the 2011 ADA regulations regarding ticket sales, the U.S. DOJ and Ticketmaster entered into a settlement agreement regarding Ticketmaster's methods of ticket sales to individuals with disabilities. "Settlement Agreement between the United States and Ticketmaster L.L.C.," *available at* https://www.ada.gov/ticketmaster.htm. The settlement agreement was the result of numerous complaints against Ticketmaster, dating back to 1998, that its methods of online ticket sales discriminated against individuals with disabilities pursuant to Title III of the ADA. *Id.* at ¶ 19.

39. The 2005 Settlement Agreement elaborates on Ticketmaster's then-method of ticket sales for accessible seats to individuals with disabilities. Namely, "individuals seeking to purchase Accessible Seating tickets must communicate their request via e-mail, and wait a period of time to learn whether there are available seats in order to consummate the purchase." *Id.* at ¶ 23.

40. Ticketmaster committed in the 2005 Settlement Agreement to "continue to explore ways that will enable individuals with disabilities to purchase tickets for Accessible Seats on-line in the same manner individuals purchase tickets for General Seating on-line." *Id.* at ¶ 36.

41. On information and belief, Ticketmaster is using a substantially similar method of online ticket sales for accessible seating that it articulated thirteen years ago in the Settlement Agreement with the U.S. DOJ.

42. On information and belief, Ticketmaster's method of online ticket sales for accessible seating has not substantially changed since the subsequent promulgation of the 2011

ADA regulations governing ticket sales to individuals with disabilities.

43. On December 4, 2017, counsel for MR. CARRIER submitted a "Freedom of Information Act" ("FOIA") request to the U.S. DOJ, Civil Rights Division requesting "any and all enforcement actions taken the U.S. DOJ against Live Nation Entertainment and/or its subsidiary companies – including but limited to Ticketmaster – related to alleged violations of the [ADA] …"

44. On January 31, 2018, counsel for MR. CARRIER received responsive information from the U.S. DOJ stating that "some of the records you have request pertain to ongoing law enforcement proceedings …"   Based on the response by the U.S. DOJ, MR. CARRIER, through his counsel, is unable to obtain additional information about how (or whether) Ticketmaster is going to bring its methods of ticket distribution into compliance with federal civil rights law in the future.

45. Having contracted with Ticketmaster for ticket sales to its event, DEFENDANT is liable for any ADA violations related to Ticketmaster's methods of ticket sales to individuals with disabilities.

46. Given Ticketmaster's continuous flouting of federal civil rights law, and given the lack of a date-certain when Ticketmaster will bring its methods of ticket distribution into compliance, MR. CARRIER needs an injunction ordering DEFENDANT to work with another online ticket vendor.

47. MR. CARRIER is interested in purchasing tickets online to DEFENDANT's event in the future, but fears that he will encounter the same discriminatory methods of ticket sales which are the subject of this action.

48. MR. CARRIER's ongoing and future inability to purchase tickets online to DEFENDANT's event poses several harms.

49. First, there is limited ticket availability for accessible seating and MR. CARRIER desires to purchase tickets in the same "first-come, first-served" manner that non-disabled individuals enjoy when availing themselves of online ticket sales services.

50. Second, MR. CARRIER is unfairly burdened by the possibility of having to travel to a physical box office to purchase tickets to DEFENDANT's event due the unavailability of online ticket sales and possible extended call times waiting for a sales agent over the phone.  Unnecessary travel to a physical box office poses the risk of waiting outside in the elements, including excessive summer temperatures or thunderstorms, in an attempt to buy tickets to DEFENDANT's annual event each July.  Such a burden is not borne by non-disabled individuals, who can freely purchase tickets online at their leisure.

51. MR. CARRIER plans to and will attempt to purchase tickets online to DEFENDANT's event in the future as a patron and also as an ADA tester to determine if the discriminatory methods of ticket sales alleged herein have been modified.

52. MR. CARRIER desires to attend DEFENDANT's event in the future, as he enjoyed the concert he attended on July 2, 2017 and he is interested in attending the Essence Festival in the future given its annual line-up of world-famous musicians and entertainers.  MR. CARRIER maintains that he enjoyed the DEFENDANT's event despite one major aspect of it, namely, the discrimination posed by DEFENDANT's ticket sales practices.

53. MR. CARRIER presently fears that he will encounter the same methods of online ticket sales in the near future.

54. MR. CARRIER continues to desire to purchase tickets online to DEFENDANT's event, but will continue to experience a barrier to online ticket sales until the DEFENDANT changes its methods of online ticket sales.

55. Upon information and belief, the DEFENDANT's methods of online ticket sales are still in effect and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though modification is readily achievable.

56. Upon information and belief, modification in the methods of online ticket sales is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on DEFENDANT.

57. Upon information and belief, modification in the DEFENDANT's methods of online ticket sales would provide MR. CARRIER with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which are offered to the general public at the DEFENDANT's event.

58. Upon information and belief, DEFENDANT has failed to adopt any changes to its methods of online ticket sales which would provide MR. CARRIER with equal access to ticket sales to DEFENDANT's event.

59. Independent of his intent to return as an attendee to DEFENDANT's event, MR. CARRIER additionally intends to return as an ADA tester to determine whether the DEFENDANT's methods of online ticket sales have been remedied such that he is able to buy tickets for accessible seats online without first completing any forms or being subjected to any follow-up phone calls or e-mail correspondence concerning his purchase of accessible seating.

60. MR. CARRIER has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 42 U.S.C. § 12205.

WHEREFORE, MR. CARRIER demands judgment against DEFENDANT and requests the following relief:

A. That this Court declare that the DEFENDANT's methods of ticket sales are in violation of the ADA;

B. That this Court enter an Order directing DEFENDANT to alter its methods of online ticket sales to make them accessible to and useable by individuals with disabilities to the full extent required by Title III of the ADA;

C. That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. CARRIER, pursuant to 42 U.S.C. § 12205; and

D. That this Court award such other and further relief as it deems necessary, just, and proper.

Respectfully Submitted,

BIZER & DEREUS, LLC
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Jennifer M. Coco (LA #34492)
jcoco@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
    Andrew D. Bizer